

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| UNITED STATES OF AMERICA, | Cause No. CR 16-06-BLG-SPW |
| --- | --- |
| Plaintiff/Respondent, | CV 18-98-BLG-SPW |
| vs. | ORDER DENYING § 2255 MOTION AND DENYING CERTIFICATE OF APPEALABILITY |
| JOSEPH CURTIS MORRISON, | |
| Defendant/Movant. | |

This case comes before the Court on Defendant/Movant Morrison's motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255. Morrison is a federal prisoner proceeding pro se.

**I. Preliminary Review**

Before the United States is required to respond, the Court must determine whether "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *see also* Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts. A petitioner "who is able to state facts showing a real possibility of constitutional error should survive Rule 4 review." *Calderon v. United States Dist. Court*, 98 F.3d 1102, 1109 (9th Cir. 1996) (*"Nicolas"*) (Schroeder, C.J., concurring) (referring to Rules Governing § 2254 Cases). But the Court should "eliminate the

1

burden that would be placed on the respondent by ordering an unnecessary answer." Advisory Committee Note (1976), Rule 4, Rules Governing § 2254 Cases, *cited in* Advisory Committee Note (1976), Rule 4, Rules Governing § 2255 Proceedings.

## II. Background

On January 21, 2016, a grand jury indicted Morrison on one count of involuntary manslaughter, a violation of 18 U.S.C. § 1112(a). Jurisdiction arose under the Major Crimes Act, 18 U.S.C. § 1153(a). *See* Indictment (Doc. 1) at 1–2. Attorney Robert Kelleher was appointed to represent Morrison. *See* Order (Doc. 17).

A jury was summoned and appeared for trial on August 1, 2016. At the final pretrial conference, however, Morrison said he had decided to plead guilty. He pled guilty in open court without a plea agreement. *See* Minutes (Doc. 33).

A presentence report was prepared. The total offense level was 20, and the criminal history category was IV. The advisory guideline range was 51 to 63 months. *See* Statement of Reasons (Doc. 50) at 1 §§ I(A), III; Presentence Report ¶¶ 17–25, 40, 112. Due to the egregious nature of the offense, Morrison was sentenced to serve 96 months in prison, the statutory maximum for involuntary manslaughter. *See* 18 U.S.C. § 1112(b) para. 2. When he is released from prison, Morrison will begin serving a three-year term of supervised release. *See* 18 U.S.C.

§ 3553(a); *see also* Minutes (Doc. 48); Judgment (Doc. 85) at 2-3; Sentencing Tr. (Doc. 61) at 31:21–37:25.

Morrison appealed his sentence. It was affirmed. *See* Mem. (Doc. 64) at 2, *United States v. Morrison*, No. 16-30282 (9th Cir. Oct. 27, 2017).

Morrison's conviction became final on January 25, 2018. *See Gonzalez v. Thaler*, 565 U.S. 134, 150 (2012). He timely filed his § 2255 motion on June 19, 2018. *See* 28 U.S.C. § 2255(f)(1); *Houston v. Lack*, 487 U.S. 266, 276 (1988).

### III. Claims and Analysis

Morrison claims that counsel was ineffective in various respects. These claims are governed by *Strickland v. Washington*, 466 U.S. 668 (1984). At this stage of the proceedings, Morrison must allege facts sufficient to support an inference (1) that counsel's performance fell outside the wide range of reasonable professional assistance, *id.* at 687-88, and (2) that there is a reasonable probability that, but for counsel's unprofessional performance, the result of the proceeding would have been different, *id.* at 694.

#### A. "Gross Negligence" and Reckless Driving

Morrison's first two claims, *see* Mot. § 2255 (Doc. 66) at 4, 5, can be addressed together.

Morrison asserts that counsel did not understand what the United States had to prove to convict him of involuntary manslaughter and that "[t]here was no

3

sufficient factual evidence to support that Movant was indeed drunk . . . as the record clearly shows that movant never admitted to having been under the influence of alcohol or drugs." Br. in Supp. (Doc. 67) at 10; *see also id.* at 14. As a result, he argues, he pled guilty to involuntary manslaughter in the mistaken belief that the United States only had to prove "he had killed somebody with his vehicle." *Id.* at 10. Further, he claims, his advisory guideline calculation was mistakenly based on reckless operation of a vehicle despite lack of evidence that he knew his conduct posed a serious risk and he chose to disregard it. *See id.* at 13–15.

This was not a complicated case. The law did not require that Morrison remember the crime or admit the truth of the evidence. It did not require the United States to prove that Morrison was drunk. The United States had to present evidence sufficient to persuade a reasonable jury beyond reasonable doubt that Morrison killed a person by acting with wanton or reckless disregard for human life and knew that his conduct would be a threat to the lives of others. *See* 9th Cir. Jury Instrs. Criminal 8.1110, at 301 (2010 ed., approved Oct. 2013). At sentencing, it had to prove his crime involved the reckless operation of a vehicle. *See* U.S.S.G. § 2A1.4(b)(2) (Nov. 1, 2016).

Contrary to Morrison's sparse description of the facts, *see* Br. in Supp. at 4–5, the United States had a lot of evidence against him:

4

On the afternoon of August 27, 2015, Joseph Curtis Morrison, Jr. drove through a stop sign at the four-way stop in downtown Lame Deer and ran over D.R., killing her immediately. Morrison quickly abandoned his vehicle and fled from the scene.

Driving from Ashland, Montana in a white Chevrolet Suburban, Morrison drove through the intersection of Highways 212 and 39 in Lame Deer and hit D.R. as she was walking in the crosswalk. As Morrison approached the intersection, his Suburban left the road, went up on the sidewalk around the cars stopped at the stop sign, and then went through the intersection. It struck D.R. as she was in the crosswalk and pulled her under the vehicle. Morrison drove through the intersection and struck the curb, which dislodged D.R.'s body. Morrison then accelerated and continued westbound. The Suburban was found abandoned at the next turnoff. D.R.'s body ended up on the sidewalk where she was pronounced dead.

A number of people at the intersection witnessed the incident. Christina Pyle saw the Suburban jump the curb and accelerate into the intersection, driving approximately 35–40 miles per hour. Rose James saw Morrison in the Suburban as it hit Rowland and estimated that he was driving 45 miles per hour at the time of impact. James' passenger, Elizabeth Harris, was able to tentatively identify the driver as Morrison. Clayton Small had an unobstructed view of the intersection at the time and reported seeing Morrison driving the Suburban when it hit Rowland. Morrison then drove up the hill and abandoned the vehicle.

Witnesses also report that after hitting Rowland, Morrison parked the car in the utilities building driveway nearby. Jace Bullcoming and his sister Angela Whiteman were near the utilities building at the time. Bullcoming reported that Morrison pulled up in the Suburban and stated: "I hit somebody." Bullcoming said that the hood of the Suburban was bent into a V-shape and that it was leaking radiator fluid. Morrison also told Bullcoming that he had fallen asleep at the wheel and that he had been awake for about a week. Nobody else was with Morrison in the vehicle at the time. Morrison, Bullcoming, and Whiteman got into and sat in the vehicle for about five minutes before walking back toward the highway. The trio then hitched a ride to the Muddy Cluster residential area between Lame Deer and Busby. When they arrived, Morrison told them that he had to go and he ran up the hill near Highway 212.

5

> In the Muddy Cluster housing area, Morrison went to a house where he washed his hands and hair in the sink. Witnesses at the house reported that Morrison was anxious during this time, was sweating and breathing heavily, and smelled of whiskey. One of the individuals at the house eventually gave Morrison a ride to a campground near the reservation line. Morrison told one of the individuals at the campground that he was involved in a hit and run accident and that he was passed out at the time.
>
> A search warrant was executed on the Suburban on August 28, 2015. Investigators found a bottle of Black Velvet on the passenger-side floorboard and a wallet containing two identification cards for Joseph Morrison. Morrison is an enrolled member of the Northern Cheyenne Tribe and the incident occurred within the exterior boundaries of the reservation.

U.S. Trial Br. (Doc. 26) at 2–4. At the change of plea hearing, the prosecutor recited all this evidence in Morrison's presence. When he was asked whether he disagreed with any of it, he answered, "No." *See* Change of Plea Tr. (Doc. 60) at 23:17–26:7.

There is no reason to believe Morrison's counsel did not know what would and would not constitute "gross negligence." At the change of plea hearing, he agreed with the United States' definition of the term. *See id.* at 22:17–23:9. There is no realistic possibility that a reasonable and impartial juror, presented with the evidence above, would have failed to find Morrison guilty beyond reasonable doubt. And there is no foothold for an argument that Morrison did not operate a vehicle or did not do so recklessly. Neither prong of the *Strickland* test is met as to either claim. These claims are denied.

6

## B. Evidence of Mental Impairment

Morrison's third and final claim alleges that counsel was ineffective because he did not pursue a defense based on Morrison's history of traumatic brain injury and long-term substance abuse. *See* Mot. § 2255 at 7. He claims that these issues "could have caused . . . Movant to have become impaired and unconsci[ous] on the day of the incident." Br. in Supp. at 16–17.

Before sentencing, counsel filed a psychological evaluation by Dr. Dee Woolston, Ph. D. Dr. Woolston acknowledged Morrison's self-descriptions of head injuries, *see, e.g.*, Woolston Report (Doc. 43) at 2, "Medical Status" ¶¶ 4–5, 10; *id.* at 9, "Medical Concerns." Notably, however, Morrison did not provide medical records to Dr. Woolston, *see* Woolston Report (Doc. 43) at 1 ("Documents Reviewed"), or the probation office, *see* Presentence Report ¶¶ 92–94, so the foundation of his report is not strong.

Further, the United States' evidence negated an "accident." This was not a case of missing a signal to stop. The evidence suggested Morrison drove up on the sidewalk to get around other cars. Witnesses said they recognized Morrison as the driver; no one said he was unconscious or slumping. Morrison fled the scene, and he told more than one person that he hit someone. He claimed he was "passed out" or had fallen asleep because he had been awake for about a week. These are not the actions of someone who is not aware of what happened. Whether he

7

remembers the incident second by second or not, there was ample evidence that he knew he acted with deadly recklessness. There is no reason to infer that counsel unreasonably ignored the possible application of Dr. Woolston's evidence, and there is no reasonable probability that a jury presented with the United States' evidence and also Dr. Woolston's testimony would have acquitted Morrison. Neither prong of the *Strickland* test is met. This claim is denied.

### IV. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2255 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

None of Morrison's claims meets even the relatively low threshold required for a COA. All depend on ignoring the witness testimony and self-incriminating statements the United States was prepared to present at trial. There is no reason to suppose counsel did not know the definition of "gross negligence" or "reckless"

operation of a vehicle, and there is no reasonable probability that anyone would believe Morrison did not commit involuntary manslaughter or recklessly operate a vehicle. Morrison refers to nothing more than his say-so to show a history of traumatic brain injury, and there is no reasonable probability a jury presented with both the United States' evidence and Dr. Woolston's report would have acquitted Morrison. There is no reason to encourage further proceedings. A COA is not warranted.

Accordingly, IT IS HEREBY ORDERED as follows:

1. Morrison's motion to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255 (Docs. 66, 67) is DENIED.

2. A certificate of appealability is DENIED. The Clerk of Court shall immediately process the appeal if Morrison files a Notice of Appeal.

3. The Clerk of Court shall ensure that all pending motions in this case and in CV 18-98-BLG-SPW are terminated and shall close the civil file by entering judgment in favor of the United States and against Morrison.

DATED this 22nd day of October, 2018.

Susan P. Watters
United States District Court