IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>JOSEPH CURTIS MORRISON, JR.,<br><br>Defendant. | CR 16-06-BLG-SPW<br><br><br>ORDER |

On August 1, 2016, Defendant Joseph Curtis Morrison, Jr. pleaded guilty to involuntary manslaughter. (Doc. 33). The investigation showed that Morrison was driving while intoxicated on Montana Highway 212 in Lame Deer, Montana when he drove around cars stopped at a crosswalk up onto a sidewalk and struck Daisy Rowland with his vehicle. (Doc. 51 at 3). Her body was pulled underneath Morrison's vehicle and drug through the intersection until Morrison hit a curb at the intersection's northwest corner. (*Id.*). Rowland's body dislodged from the vehicle and ended up on the sidewalk. (*Id.*). She appeared to be instantly killed. (*Id.*). Morrison fled the scene in his vehicle and eventually abandoned it. (*Id.*).

On November 16, 2016, this Court varied above the advisory guideline range and sentenced Morrison to a total term of imprisonment of 96 months—the statutory maximum—and three years of supervised release. (Doc. 78). The Court varied upward in part due to the "deeply troubling" nature and circumstances of the offense,

1

and in part due to Morrison's history of both driving while intoxicated and substance-fueled violence, including one incident where he beat a person nearly to death and left them bleeding alongside a highway. (Doc. 50 at 4). The Court also noted that, despite previously spending long periods of time in prison and under supervision, Morrison's attitude and conduct never changed, and he continued to present a danger to his community. (*Id.*).

Morrison's supervision commenced on July 1, 2022. (Doc. 81 at 2). On August 13, 2024, Morrison filed a motion seeking early termination of his supervised release. (Doc. 80). He explains that he completed a Life Connection course while incarcerated, worked with Indian Health Services in Great Falls to develop a cultural course to teach others Native American cultures and traditions, and works with the North Cheyenne Preservation society and a California church to teach youth the customs and traditions of the Northern Cheyenne tribe. (Doc. 81 at 3). After working in construction and the restaurant industry, Morrison is now unable to work and receives disability but "stays busy by providing wood for families on the reservation, camping with family, teaching the spiritual principles and practices of the Northern Cheyenne culture," participating in sweat lodges, and creating art. (*Id.* at 3–4).

Morrison represents that his probation officer does not oppose early termination. (Doc. 80 at 2).

The Government opposes early termination of Morrison's supervision because of the seriousness of the offense, the need for just punishment, the potential danger Morrison may still pose to the community, and the benefits of continued supervision—specifically the required random urinalysis testing—in light of Morrison's long history of substance abuse. (Doc. 82 at 2). The Government emphasizes the facts of the offense and Morrison's substance abuse-fueled criminal history. (*Id.* at 3–7). The Government also asserts that Morrison's motion "provides no exceptional reason why he seeks to terminate his release early." (*Id.*). Instead, the Government maintains that "[t]erminating Morrison's supervision early would undermine the seriousness of his crimes and diminish respect for the law." (*Id.* at 7).

"After considering a subset of the sentencing factors set forth in 18 U.S.C. § 3553(a), a court may terminate a term of supervised release 'if it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice.'" *United States v. Emmett*, 749 F.3d 817, 819 (9th Cir. 2014) (quoting 18 U.S.C. § 3583(e)(1). The § 3553(a) factors are: the nature and circumstances of the offense; the history and characteristics of the defendant; the need to afford adequate deterrence to criminal conduct; the need to protect the public from further crimes of the defendant; the need to provide the defendant with needed educational or vocational training, medical care or other correction treatment in the most effective

3

manner; the advisory Guideline range; any pertinent policy statement issued by the Sentencing Commission; sentencing disparities; and any outstanding restitution obligations. The Court retains wide discretion in determining whether to terminate a defendant's supervised release early. *Emmett*, 749 F.3d at 819.

In light of the § 3553(a) factors, the Court agrees with the Government that early termination of Morrison's supervision is inappropriate. As described, Morrison's conduct in the underlying offense is deeply troubling. Not only did he hit a woman while drunk driving in the middle of the day but also immediately fled the scene instead of trying to help her. Morrison's actions that day were not an aberration at that point in his life: he had seven DUIs and multiple convictions for violent offenses beginning in 1984 and continuing through the instant offense. (*See* Doc. 51 at 6–16). Morrison simply presented a great danger to the community for decades. These facts compelled the Court to vary above the guidelines and impose the statutory maximum sentence.

Though the Court lauds Morrison for his compliance with the terms of his supervision and successful reintegration into the community thus far, the seriousness of the offense and his engagement in criminal, violent, and dangerous conduct over multiple decades justify continued supervision. Continuing Morrison's supervision hopefully will ensure that Morrison continues on the positive path he has forged and avoids relapsing into old habits.

4

Accordingly, IT IS HEREBY ORDERED that Morrison's motion for early termination of supervised release (Doc. 80) is DENIED.

DATED this 9th day of September, 2024.

*Susan P. Watters*
SUSAN P. WATTERS
UNITED STATES DISTRICT COURT